(No. 96879.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAMARIS CUADRADO, Appellant.

*Opinion filed January 21, 2005.*

Frederick F. Cohn, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee Goldfarb, Annette Collins and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

JUSTICE KILBRIDE delivered the opinion of the court:

Defendant, Damaris Cuadrado, was convicted in the circuit court of Cook County for solicitation of murder for hire (720 ILCS 5/8—1.2(a) (West 2002)). She appealed, and the appellate court held, *inter alia*: (1) when a challenge to the sufficiency of an indictment is raised during trial, after the close of the State's case and denial of a defendant's motion for a directed verdict, an indictment will stand if it is specific enough to apprise the defendant to allow preparation of a defense; (2) the State's substitution of the word "procured" for the word "solicited" in the indictment did not impede defendant's ability to prepare a defense; (3) the evidence was sufficient to support a conviction; and (4) defendant was not deprived of the right to confront a State's witness. 341 Ill. App. 3d 703. We allowed defendant's petition for leave to appeal (177 Ill. 2d R. 315(a)) and now affirm the appellate court's judgment.

## I. BACKGROUND

Defendant was indicted for solicitation of murder for hire because, with the requisite intent, she allegedly solicited Benjamin Jimenez to commit first degree murder for money. The evidence at trial showed defendant offered to pay Jimenez $10,000 to murder her husband. Jimenez told defendant he would look into it, and the two agreed to meet again. Jimenez recorded their second meeting and asked for confirmation that defendant wanted her husband killed, not just beaten. Defendant replied she wanted her husband "gone" and "out of the picture." Jimenez told her he had not found anyone to commit the murder, but he would continue to look.

At a later meeting, defendant inquired whether Jimenez had found anyone to kill her husband. Jimenez said he had not. Sometime later, defendant paged Jimenez and told him she no longer needed his services because

she had someone else murder her husband. At that point, Jimenez told defendant he had recorded their previous conversation and would give the tape to the police unless she paid him some money. Defendant responded that she needed some time to get the money. Eventually, defendant paid Jimenez a total of $4,000, and then told him she would meet him one more time to give him another payment.

Subsequently, defendant arranged to have her boyfriend, Darryl Mitchell, shoot Jimenez. As a result of that attack, Jimenez was paralyzed and remains in a wheelchair. After being shot, Jimenez initially maintained he had been injured by members of a street gang. Jimenez later identified the shooter as Mitchell from a photo array and from a lineup.

At trial, Jimenez's mother, Teresa, testified she called police at her son's request. Jimenez had stated to her that defendant had arranged his shooting and he wanted to prevent her from "getting away with this." Teresa testified she had listened to the conversation taped by her son but at that time did not recognize the female voice on the tape. Later, after the police became involved and Teresa participated in a confidential overhear of a telephone call between Jimenez and defendant, Teresa identified defendant's voice as the one on the tape. Additionally, Teresa overheard defendant being questioned at the police station and again identified defendant's voice as the one on the tape and in the confidential overhear.

Defendant was convicted and appealed, raising three main claims: (1) the sufficiency of the indictment; (2) the sufficiency of the evidence; and (3) a violation of her constitutional right to confront the witnesses against her. The appellate court affirmed. 341 Ill. App. 3d 703.

The appellate court held that defendant was not prejudiced by the State's substitution of the word

"solicit" for the word "procure" in the indictment. 341 Ill. App. 3d at 714. The court also determined that sufficient evidence existed for a rational trier of fact to find that defendant "procured" Jimenez to commit first degree murder pursuant to an agreement for money. 341 Ill. App. 3d at 716. Finally, the court held that defendant's constitutional right to confrontation was not violated by her inability to see the entire face of witness Jimenez due to the placement of his wheelchair in the courtroom. 341 Ill. App. 3d at 717. We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315(a).

Before this court, defendant renews her challenges to: (1) the sufficiency of the indictment; (2) the jury instructions substituting the word "solicit" for the word "procure"; (3) the positioning of Jimenez's wheelchair at trial; and (4) the admission of Teresa Jimenez's hearsay testimony because it denied defendant's rights to due process, a fair trial, and to confront the witnesses against her. Although raised in the appellate court, defendant has not challenged the sufficiency of the evidence in this appeal.

## II. ANALYSIS

### A. Sufficiency of the Indictment

The primary issue in this appeal is whether the trial court erred by refusing to dismiss the indictment because it failed to allege an element of the crime, namely, procurement of an individual to commit murder. The relevant statutory provision states:

> "Solicitation of Murder for Hire. (a) A person commits solicitation of murder for hire when, with the intent that the offense of first degree murder be committed, he *procures* another to commit that offense pursuant to any contract, agreement, understanding, command or request for money or anything of value." (Emphasis added.) 720 ILCS 5/8—1.2(a) (West 2002).

Defendant's indictment provided, in relevant part:

"Damaris Cuadrado *** committed the offense of solicitation of murder for hire in that [she], with the intent that the offense of first degree murder be committed, to wit: that Edgardo Cuadrado be killed, *solicited* Benjamin Jimenez to commit said offense of first degree murder, pursuant to an agreement or contract for money." (Emphasis added.)

A comparison of the statutory provision and the charging instrument reveals the word "procures" in the statute was replaced in the indictment by the word "solicited." Defendant argues that because the essential element of "procurement" was not included in the indictment she was not properly charged and, pursuant to *People v. Scott*, 285 Ill. App. 3d 95 (1996), the indictment should have been dismissed. The State counters that *Scott* was wrongly decided because it misapplied this court's decision in *People v. Benitez*, 169 Ill. 2d 245 (1996).

In *Scott*, the defendant was ticketed for disorderly conduct and with resisting or obstructing a peace officer, and the case proceeded to bench trial. *Scott*, 285 Ill. App. 3d at 97-98. After the State presented its case in chief, the defendant filed a motion seeking a directed finding on the disorderly conduct charge. In his motion, defendant claimed the State had failed to allege a statutory offense because the ticket did not specify the applicable subsection of the disorderly conduct statute and the nature and elements of the offense. *Scott*, 285 Ill. App. 3d at 98. The trial court concluded the defendant had waived that claim when he proceeded to trial on the ticket rather than requesting a more specific formal information, bill of particulars, or verified complaint. The defendant was later convicted of both charges. *Scott*, 285 Ill. App. 3d at 98.

The appellate court reversed the disorderly conduct conviction, reasoning, in relevant part, that due process is implicated when a charging instrument fails to state a valid offense. Under those circumstances, the defective

charge could be attacked at any time. *Scott*, 285 Ill. App. 3d at 98, citing *People v. DiLorenzo*, 169 Ill. 2d 318, 321 (1996). According to the appellate court, "[s]uch a challenge to a complaint may be made before or during the trial—even at [the] end of the State's case." *Scott*, 285 Ill. App. 3d at 98-99.

The *Scott* court then noted that when the sufficiency of a criminal complaint is challenged the court must determine whether there is strict compliance with the requirements of section 111—3(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3(a) (West 2000)). See also *Scott*, 285 Ill. App. 3d at 99, citing *Benitez*, 169 Ill. 2d 245. That section requires the charge to be in writing, to name the charged offense and the statutory provision allegedly violated, and to set forth the nature and elements of the charged offense. 725 ILCS 5/111—3(a) (West 2000).

Turning to the merits of the defendant's challenge to the charging instrument, the *Scott* court agreed that the instrument was fatally defective under the strict compliance standard of section 111—3(a). *Scott*, 285 Ill. App. 3d at 99. While the instrument named the offense and the general statute, it failed to cite the appropriate subsection and to allege the specific nature and elements of the offense with any particularity. *Scott*, 285 Ill. App. 3d at 99-100.

According to the State, we should reject *Scott* because that court reached its conclusion based on an erroneous reading of *Benitez*, 169 Ill. 2d 245. In *Benitez*, two days into trial, the defendant learned that the original indictment had not named him as a defendant and had not alleged the correct victim. Thus, the original indictment had not properly charged defendant with any offense. Rather than following the proper procedures for obtaining an amended indictment, however, the State simply prepared its own corrected indictment that was signed

by neither the State's Attorney nor the grand jury foreperson. *Benitez*, 169 Ill. 2d at 246-47. Both the trial court and the appellate court treated the amended indictment as valid, finding that it "properly charged and informed [the defendant] of the nature and elements of the charges." *Benitez*, 169 Ill. 2d at 250. Accordingly, the lower courts concluded the indictment was not subject to attack as void. *Benitez*, 169 Ill. 2d at 250. This court reversed.

In relevant part, this court reasoned:

"It is undisputed that the State did not return the initial, endorsed indictment to the grand jury for correction. Nor did the State file a motion to amend the initial indictment in the circuit court pursuant to section 111—5. Rather, the State arrogated for itself the power to amend the indictment as it saw fit. Secretaries in the State's Attorney's office prepared the second indictment to replace the first indictment. The second indictment added two new defendants and changed the name of a victim. We cannot sanction such a practice. Assistant State's Attorneys and their staff do not have the authority to amend grand jury indictments at will. Accordingly, we find that the second indictment was not valid as to the present defendant. Because the initial indictment failed to name defendant and the second indictment was not valid, defendant was never properly charged with any offense." *Benitez*, 169 Ill. 2d at 255.

In reversing the appellate and trial courts, we noted that the timing of a challenge to the indictment "has been considered significant in determining whether a defendant is entitled to reversal of his conviction on that ground." *Benitez*, 169 Ill. 2d at 257. Under the relevant case law and statutory provisions, posttrial motions attacking the sufficiency of an indictment are subject to a prejudice standard. *Benitez*, 169 Ill. 2d at 257. Applying this standard, the charging instrument is sufficient if it " 'apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and al-

low pleading a resulting conviction as a bar to future prosecutions arising out of the same conduct.' " *Benitez,* 169 Ill. 2d at 257, quoting *People v. Gilmore,* 63 Ill. 2d 23, 29 (1976); see also Ill. Rev. Stat. 1991, ch. 38, par. 116—2 (as amended by Pub. Act 86—391, § 1, eff. August 30, 1989).

If the charging instrument is challenged in a pretrial motion to dismiss, the *Gilmore* rule requiring a showing of prejudice does not apply, and the proper remedy is dismissal. *Benitez,* 169 Ill. 2d at 258, citing *People v. Thingvold,* 145 Ill. 2d 441, 448 (1991). We acknowledged in *Benitez* that the factual scenario before the court did not fit neatly into either category because the defendant challenged the indictment two days into trial. *Benitez,* 169 Ill. 2d at 259. We then held that, "under the unique circumstances of [the] case, [the] defendant [was] not required to show that he sustained prejudice to warrant reversal of his convictions." *Benitez,* 169 Ill. 2d at 259.

Based on this analysis, the State argues that the *Scott* court erred by relying on this court's decision in *Benitez* because *Benitez* was based primarily on the existence of prosecutorial malfeasance. In other words, the State maintains that the guiding force behind treating the mid-trial challenge to the indictment in *Benitez* in the same manner as a pretrial challenge was the misbehavior of the prosecution in that case. We agree and overrule the portion of *Scott* indicating the applicable standard for a midtrial challenge to an indictment. See *Scott,* 285 Ill. App. 3d at 99. *Scott* was erroneously founded on our decision in *Benitez,* a factually unique case. *Benitez* represents an exception to our general requirement of prejudice when an indictment is challenged after the commencement of trial. Our holding in *Benitez* clearly relied in large part upon the prosecution's misconduct. Due to that misconduct, the defendant was denied an opportunity to object to the deficiencies in the indictment

before trial because he was only apprised of the State's improprieties after the trial had begun.

In marked contrast, defendant in this case had ample opportunity before trial to object to the indictment. The indictment properly cited the charged offense (720 ILCS 5/8—1.2 (West 1994)). Its only deficiency was the substitution of the word ''solicited'' for the word ''procured'' used in the statutory section defining solicitation of murder for hire (720 ILCS 5/8—1.2(a) (West 2002)). We disagree with the State that the substitution is irrelevant and that the two terms are interchangeable. We do agree with the State, however, that defendant was not prejudiced by the substitution. Prior to filing her motion to dismiss the indictment, defendant filed and argued a motion for a directed finding, alleging the State's case in chief failed to prove that she ''procured'' Jimenez to murder her husband. This motion establishes that defendant was aware of the State's need to prove procurement. We cannot say the error in the indictment inhibited defendant in the preparation of her defense. Accordingly, we cannot conclude that defendant suffered any prejudice.

## B. Jury Instructions

In a related issue, defendant claims the jury was improperly instructed on an uncharged offense. Specifically, defendant contends the instruction defining solicitation of murder for hire (Illinois Pattern Jury Instruction, Criminal, No. 6.01B (3d ed. 1996) (hereinafter IPI Criminal 3d)) and the issues instruction for solicitation of murder for hire (IPI Criminal 3d No. 6.02B) should not have been given because both of these instructions use the word ''procure'' when the indictment used the word ''solicited.'' According to defendant, the variance between the language in the indictment and the instructions given to the jury violated her due process rights.

The State argues defendant waived this issue. A

review of the record confirms the State's argument. In her objection to IPI Criminal 3d No. 6.01B and IPI Criminal 3d No. 6.02B, defendant only claimed that the instructions did not include the definition of intent for first degree murder. She did not object to the addition of the word "procure." This court has held that a specific objection waives all other unspecified grounds. *People v. O'Neal*, 104 Ill. 2d 399, 407 (1984). Moreover, defendant did not raise this issue in her posttrial motion. Accordingly, defendant's argument has been waived. See *People v. Enoch*, 122 Ill. 2d 176 (1988).

## C. Confrontation of Witness

Defendant next contends that her constitutional rights to confrontation (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) and a fair trial (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) were violated when Benjamin Jimenez, who was wheelchair-bound, was allowed to testify before the jury from a position that somewhat limited defendant's observation of Jimenez. The State maintains the trial court permitted defendant to relocate within the courtroom to obtain a better view of the witness and, therefore, her constitutional rights were not abridged. We agree.

While the confrontation clause represents a preference for face-to-face confrontation, that preference " 'must occasionally give way to considerations of public policy and the necessities of the case.' " *Maryland v. Craig*, 497 U.S. 836, 849, 111 L. Ed. 2d 666, 681, 110 S. Ct. 3157, 3165 (1990), quoting *Mattox v. United States*, 156 U.S. 237, 243, 39 L. Ed. 409, 411, 15 S. Ct. 337, 340 (1895). As noted by the State and demonstrated by the record, the trial court informed the defense no less than six times that they were free to move if they wished. Since defendant was given permission to move to a better vantage point within the courtroom, her dissatisfaction with Jimenez's positioning is a result of her own

inaction. The physical accommodations necessary to allow Jimenez to testify were consistent with the confrontation clause.

### D. Admission of Testimony

Finally, defendant argues the trial court improperly admitted a portion of Teresa Jimenez's testimony concerning a conversation she had with Jimenez shortly after he was shot. Teresa testified that Jimenez told her:

> "I need to confess the truth. That recording, the lady that you heard in the recording, she had this done to me and I don't want her getting away with this. *** I need to confess the truth before she gets away with this."

According to defendant, her right to confront the witnesses against her (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) was denied and due process (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) was violated by the improper introduction of Jimenez's prior consistent statement.

Generally, statements made prior to trial for the purpose of corroborating trial testimony are inadmissible. *People v. Heard*, 187 Ill. 2d 36, 70 (1999). An exception to this rule applies when it is suggested that the witness had recently fabricated the testimony or had a motive to testify falsely, and the prior statement was made before the motive to fabricate arose. *Heard*, 187 Ill. 2d at 70. Here, the admission of Teresa's testimony was proper because, on cross-examination, defendant suggested recent fabrication by Jimenez by eliciting testimony that in the first few days after Jimenez was shot, he lied to his mother about what happened and said he was the victim of a gang-related shooting. In addition, defense counsel questioned Jimenez about his decision to contact a lawyer regarding a potential civil suit against defendant to compensate Jimenez for his injuries. Those questions attempted to show recent fabrication and a motive to lie on the part of Jimenez. While defendant

contends Jimenez's apparent motive to lie to his mother was to excuse his acts of extortion, Teresa's testimony concerning her son's statements actually indicates Jimenez wanted to ensure that defendant would not escape culpability for her actions. The trial court did not err by admitting Jimenez's prior consistent statement because that testimony is admissible under the exception to the general bar on such statements.

## CONCLUSION

When the sufficiency of a criminal indictment is challenged during trial the court must determine whether the defendant was prejudiced by the defect. If defendant has not been prejudiced, the indictment may stand. If prejudice is established, however, the indictment must be dismissed.

The circumstances in this case establish that defendant was not prejudiced and was sufficiently apprised of the charges against her to prepare a defense. We also find no merit to the other issues raised on appeal. For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE KARMEIER took no part in the consideration or decision of this case.