2022 IL App (1st) 200294-U

No. 1-20-0294

Order filed January 31, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 11354 |
| | ) | |
| DONTANEOUS SALLEY, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for resisting or obstructing a correctional institution employee over his contentions that the indictment was defective and the evidence was insufficient to prove him guilty beyond a reasonable doubt.

¶ 2    A jury found Dontaneous Salley guilty of Class 4 felony, resisting or obstructing a correctional institution employee, and the trial court sentenced him to 18 months' imprisonment. On appeal, he argues: (i) the trial court erred in denying his posttrial motion to dismiss based on a defective indictment, and (ii) the State failed to prove him guilty beyond a reasonable doubt.

¶ 3    We affirm. The entirety of the indictment shows that a lack of factual specificity did not prejudice Salley. On the contrary, the aggravated battery charge put Salley on notice of the charge of resisting a correctional institution employee performing their official duties. Further, five other aggravated battery counts, which the State nol-prossed, similarly involved Salley's pushing the officer. Also, viewed in a light most favorable to the State, as we must, the evidence was such that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

¶ 4                                    Background

¶ 5    The State charged Salley with seven counts. On the day before trial, it nol-prossed five aggravated battery to a peace officer counts. The State proceeded to trial on one count of aggravated battery to a peace officer and one count of resisting or obstructing a correctional institution employee. 720 ILCS 5/31-1(a), (a-7) (West 2018). Salley was tried separately but simultaneously with Jacob Serrano, who is not a party to this appeal.

¶ 6    The aggravated battery count alleged Salley, in committing a battery, knowingly made physical contact of an insulting or provoking nature with Trevor Hapanionek by pushing him, and Salley knew Hapanionek was a peace officer performing official duties. The resisting count alleged that Salley "knowingly resisted or obstructed the performance of Trevor Hapanionek, one known to [Salley] to be a peace officer *** of any authorized act within his official capacity and was the proximate cause of an injury to said peace officer."

¶ 7    At trial, Hapanionek testified he had been a correctional officer assigned to the medical division of the jail system. Hapanionek's day-to-day duties included ensuring the care and control of detainees, controlling their movement, ensuring the safety of the sworn staff and civilian

personnel, and ensuring everything "runs smoothly." Doctors and other civilian staff were present because he was in the medical division. Hapanionek and the other officers were not armed and carried handcuffs. Hapanionek had received training in recognizing aggression.

¶ 8    According to Hapanionek, detainees receive a manual on the rules on admission to the jail. The rules mandate that detainees keep their clothes on and obey verbal commands. One of the spoken commands Hapanionek used was to "lock up," which informs the detainees to proceed back to their cells. Detainees who disregard verbal commands are instructed to "lock up." If the detainee refuses to lock up, an officer escorts them back to their cell. Although the officers first attempt to deescalate a situation, they may use force to restrain the detainee if that fails. This includes taking the detainee to the ground and restraining them with handcuffs. Use of force is permitted to restrain aggressive detainees.

¶ 9    On June 17, 2018, Hapanionek worked with Officers Salefski, Alvarez, and Hernandez. The L-shaped medical tier had a dayroom and hallway with a several rooms and cells. Detainees were prohibited from passing over lines marked on the floor without officer permission to ensure the safety of the civilian staff. Detainees had access to telephones near the officers' station.

¶ 10    Twelve detainees were in the dayroom area that day, including Salley, whom Hapanionek identified in court. The rules specified that detainees get 15 minutes to use the phone, and if there were no one else in line, they could use the phone again. The phone system cut the call automatically after 30 minutes.

¶ 11    Between 11:30 a.m. and 12 p.m., Salley was on the phone. A line of detainees waited in line to use the phone. Hapanionek was sitting at the officer's desk with Chad K. Salefski and Alvarez. At some point, Hapanionek instructed Salley to get off the phone because he had been on

for about 15 minutes and others were waiting. Salley stated, "Nah, *** I got 30 minutes on this phone call. You guys ain't gonna short me on my time." Hapanionek told Salley he was entitled to 15 minutes.

¶ 12    Salley began to argue, so Hapanionek asked, "Are we going to have a problem with this?" Salley responded, "[H]ell, yeah, we are going to have a problem." Hapanionek stood up, and Salley jumped up, pulled off his shirt, and "took an aggressive stance" "like he was ready to fight." Hapanionek's order to get off the phone was a verbal command, and not following the command constituted a violation.

¶ 13    Hapanionek was concerned Salley's conduct would lead to a "huge fight," where the other detainees would "get riled up and try to fight against [the officers]." He told Salley he could use the phone again later but needed to lock up because he was too aggressive. Salley got back on the phone to say goodbye to his child and then hung up. Hapanionek heard another detainee behind him who was "being aggressive and saying something." The other detainee came from the dayroom to the officers' secure station. Hapanionek saw his partners intervening and escorting away the other detainee. He told Salley again that he needed to lock up, and Salley did not comply.

¶ 14    Behind Hapanionek, officers were wrestling a detainee. Salley attempted to walk past Hapanionek to approach these officers, so Hapanionek pushed him and told him to step back. Salley told him to "[s]hut the f*** up." Because Hapanionek believed Salley was trying to get involved in the incident with the officers and detainee, he decided to handcuff Salley and escort him back to his cell. When Hapanionek grabbed Salley to handcuff him, Salley slapped his hand and pushed him in the chest. Hapanionek attempted again to grab Salley, and Salley pushed him and eventually grabbed Hapanionek's arms.

¶ 15    The two men struggled and were "almost wrestling." Hapanionek "threw two closed fist strikes to [Salley's] face," and Alvarez jumped on Salley to throw him to the ground. Hapanionek used closed fist strikes when Salley grabbed him and "turned into an assailant." Hapanionek feared Salley would try to throw him down or punch him in the face. So, Hapanionek hit Salley, believing it was the best way to get control. The Sheriff's policy authorized that type of force in this situation. Other officers arrived and eventually handcuffed Salley, who kept his arms under his body to evade handcuffing. When Hapanionek struck Salley, he broke the metacarpal on his right hand.

¶ 16    Cameras captured the incident. The State published a video of the incident and the audio of Salley's phone call with his child. Although the cameras do not record audio, the audio from the phone call was played over the video clip.

¶ 17    Hapanionek narrated the video, which tracked his testimony. Hapanionek identified himself, Officers Salefski and Alvarez, and Salley. Hapanionek is 5'8, and Salley is "probably about 6'2" and "solid muscle."

¶ 18    On cross-examination, Hapanionek acknowledged he made physical contact with Salley first but maintained that he sought to deescalate the situation. After several attempts to grab Salley and having his hands slapped away, Salley stepped back and placed his hands down. Hapanionek then grabbed Salley by the back of his neck to gain control.

¶ 19    On redirect, Hapanionek testified Salley had disobeyed "several" verbal orders from the time Hapanionek instructed him to get off the phone and leading up to the physical confrontation.

¶ 20    Cook County Sheriff's Correctional Officer Salefski testified he assisted Hapanionek by handcuffing Salley. Salefski was initially seated at an officer's desk with Hapanionek and Alvarez.

¶ 21    Salefski observed Hapanionek interact when Salley was on the phone. He walked over to Salley with Hapanionek to deescalate the situation. While Hapanionek spoke with Salley, Salefski heard Salley's voice become "elevated" and "a little bit more aggressive" and saw Salley take his shirt off. Hapanionek remained calm when speaking with Salley and attempted to explain that detainees were waiting to use the phone.

¶ 22    At some point, Salefski stepped away and turned his attention to the other detainee who approached the officers from behind, codefendant Jacob Serrano, who had walked over from the dayroom. Salefski noticed Serrano approaching and intervened so he could not get closer.

¶ 23    The State published a video of the dayroom, which Salefski narrated. Salefski pointed out the lines delineating where the detainees waited to use the phone and needed permission to cross. The video depicted Salefski with Hapanionek and Alvarez walking toward Salley, who was off-screen in a hallway. As Serrano approached the officers, Salefski gave a verbal order to return to the dayroom since he had crossed into the unauthorized area. Eventually, Serrano was detained, and Salefski assisted Hapanionek in detaining Salley. Salefski got onto Salley's back, grabbed his left arm, and handcuffed him with the assistance of another officer.

¶ 24    Defense counsel moved for a directed finding on both counts and asked the court to dismiss the resisting count. Counsel argued the resisting count failed to state an offense, and the "complaint [was] insufficient on its face" because it did not allege a physical act that Salley did. This prejudiced the defense because they "wouldn't have known how to defend against what actions" the State alleged Salley did cause Hapanionek injury. In response, the State argued the indictment put Salley on notice of the charge, and the State need not indicate a specific action. The court denied the motion, noting that defense counsel failed to raise deficiencies until the end of trial.

Although the court acknowledged the issue could be raised at any time, the judge found the indictment placed the defense on sufficient notice when read as a whole.

¶ 25    Following arguments, the jury found Salley guilty of resisting or obstructing a correctional institution employee and not guilty of aggravated battery.

¶ 26    In his motion and amended motion for judgment notwithstanding the verdict or a new trial, Salley argued that the court erred in denying his motion to dismiss the resisting count, reiterating his argument at trial. In addition, Salley alleged the indictment "merely stated the language included in the statute but did not specify any physical acts committed by [Salley] or the type of injury suffered by the complaining witness," preventing him from preparing an adequate defense.

¶ 27    The trial court trial heard argument and denied Salley's motion. On the sufficiency of the indictment, the court found the charges "were proper," and Salley had "notice and was not taken by surprise."

¶ 28    The trial court sentenced Salley to 18 months' imprisonment, served consecutively to sentences in three unrelated cases (Nos. 13 CR 8688, 13 CR 8689, and 13 CR 8690).

¶ 29                                    Analysis

¶ 30                          *Specificity of Indictment*

¶ 31    Salley alleges the trial court erred in denying his posttrial motion to dismiss because the indictment was defective for failing to identify the specific act Officer Hapanionek was undertaking at the time of the offense. Salley argues the lack of factual specificity in the indictment "as to what [he] did to resist and obstruct" Hapanionek's performance precluded him from preparing a defense and opened him to future prosecution for the same conduct.

¶ 32    A criminal defendant has a fundamental right to know of the nature and cause of the criminal allegations. *People v. Carey*, 2018 IL 121371, ¶ 20. Section 111-3(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(a) (West 2018)) requires a criminal complaint describe "the nature and elements of the offense charged." Nevertheless, the timing of when the defendant raises the alleged insufficiency of the complaint is crucial. *Carey*, 2018 IL 121371, ¶ 21. A defendant challenging the complaint before trial must strictly comply with the pleading requirements in section 111-3(a). *Id.* But when the defendant challenges the complaint about the first time during trial, as here, they must show how the alleged defect in the indictment prejudiced them in preparing their defense. *People v. Cuadrado*, 214 Ill. 2d 79, 91 (2005). In determining prejudice in the preparation of a defense, we decide whether the complaint "apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and to allow him to plead a resulting conviction as a bar to future prosecutions arising from the same conduct." *Id.*

¶ 33    In making this determination, we turn to the record. *People v. DiLorenzo*, 169 Ill. 2d 318, 324 (1996). "Thus, the question is whether, in light of the facts of record, the indictment was so imprecise as to prejudice defendant's ability to prepare a defense." *People v. Phillips*, 215 Ill. 2d 554, 562 (2005). Unless the charging instrument error prevented the preparation of the defense, we cannot conclude defendant suffered prejudice. See *Cuadrado*, 214 Ill. 2d at 88. The sufficiency of a charging instrument presents a question of law reviewed *de novo*. *Carey*, 2018 IL 121371, ¶ 19.

¶ 34    "It is a well-established rule in Illinois that all counts of a multiple-count indictment should be read as a whole and that elements missing from one count of an indictment may be supplied by another count." *Carey*, 2018 IL 121371, ¶ 25 (quoting *People v. Morris*, 135 Ill. 2d 540, 544

(1990)). The indictment charged Salley with resisting or obstructing the performance of Hapanionek, known to Salley to be a peace officer, of an authorized act within his official capacity and was the proximate cause of Hapanionek's injury. But, the count did not allege particular acts by Salley or Hapanionek. Instead, the aggravated battery charges supplied the missing information.

¶ 35    Aggravated battery count IV, on which Salley went to trial, alleged he "knowingly made physical contact of an insulting or provoking nature with Trevor Hapanionek by pushing him, and Salley knew Hapanionek was a peace officer while he was performing his official duties." Thus, this aggravated battery charge put Salley on notice that he was charged with resisting for pushing Hapanionek while Hapanionek performed his official duties. Further, the other five aggravated battery counts, which the State nol-prosed the day before trial and jury selection, were similarly premised on Salley's pushing Hapanionek. See *Carey*, 2018 IL 121371, ¶ 28 (where State did not nol-pros three counts until just before jury selection and one day before trial, all four counts of indictment, read as whole, available to inform defendant of charges while preparing for trial).

¶ 36    We find the indictment adequately apprised Salley of the nature of all the charges against him given the detail in the aggravated battery charges and considering the entire record where defense counsel extensively cross-examined the witnesses and successfully defended against the aggravated battery count.

¶ 37    The entirety of the record shows a lack of factual specificity in the indictment did not prejudice Salley.

¶ 38                              *Sufficiency of the Evidence*

¶ 39    Salley next argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt of resisting or obstructing a correctional institutional employee.

¶ 40 On a challenge to the sufficiency of the evidence, we inquire " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison,* 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We draw all reasonable inferences in favor of the State (*Davison*, 233 Ill. 2d at 43), and do not retry the defendant (*People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). We will not overturn "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Givens,* 237 Ill. 2d 311, 334 (2010).

¶ 41 A defendant commits the offense of resisting or obstructing a correctional institution employee when he or she "knowingly resists or obstructs the performance by one known to the person to be a *** correctional institution employee" of "any authorized act within his or her official capacity." 720 ILCS 5/31-1(a) (West 2018). Relevant here, the offense is a Class 4 felony where the "violation was the proximate cause of an injury to a correctional institution employee." 720 ILCS 5/31-1(a-7) (West 2018). Salley argues that the State failed to establish the nature of the authorized act Salley was resisting and whether Salley's conduct proximately caused Hapanionek's injury.

¶ 42 "[A] physical act of resistance or obstruction [is] a physical act that impedes, hinders, interrupts, prevents, or delays the performance of the officer's duties, such as by going limp or forcefully resisting arrest." *People v. Agnew-Downs*, 404 Ill. App. 3d 218, 226 (2010). " 'Resisting' or 'resistance' means withstanding the force or effect of or the exertion of oneself to counteract or defeat." *Id.*

¶ 43 We conclude that the evidence, viewed in a light most favorable to the State, was such that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The evidence established that Hapanionek was a correctional employee charged with maintaining order in the jail, ensuring the safety of the staff and detainees, and enforcing the rules to be followed by detainees. Hapanionek testified he was attempting to keep Salley separate and avoid a more significant confrontation between the detainees and guards. Moreover, the safety of nearby doctors and civilian staff was a concern. Hapanionek said he tried to deescalate the situation with Salley, who violated the rules by failing to comply with several verbal orders.

¶ 44 While attempting to deescalate the situation, Hapanionek tried to grab Salley's arms to handcuff him and escort him back to his cell. Salley repeatedly pushed Hapanionek, preventing him from grabbing Salley's arms. Additionally, Salley disobeyed multiple orders to "lock up" and resisted Hapanionek. As the two engaged in a scuffle, Hapanionek struck Salley twice in an attempt to "stun" and handcuff him.

¶ 45 A rational trier of fact could find this evidence sufficient to establish that Salley committed an act of physical resistance against Hapanionek. At the same time, Hapanionek was engaged in an authorized act in his official capacity.

¶ 46 Moreover, this evidence showed Salley's actions proximately caused Hapanionek's injury. " '[P]roximate cause' describes two distinct requirements: cause in fact and legal cause." *People v. Hudson*, 222 Ill. 2d 392, 401 (2006). Cause in fact exists when the defendant's actions are "a material element and a substantial factor in bringing about the injury." *People v. Mumaugh*, 2018 IL App (3d) 140961, ¶ 28.

¶ 47 Legal cause involves the " 'question of foreseeability,' " that is, " 'whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.' " *Hudson*, 222 Ill. 2d at 401 (quoting *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999)). Without foreseeability, it would be unfair to hold defendants accountable for a result extraordinarily different from the intended outcome of their actions. *Id.* Defendants' actions may be the legal cause for an officer's injury even where they are not the only cause. *People v. Cervantes*, 408 Ill. App. 3d 906, 910 (2011).

¶ 48 Salley's repeated pushing of Hapanionek in an attempt to frustrate attempts to restrain and handcuff him constituted a material element and substantial factor of Hapanionek's injury. See *Mumaugh*, 2018 IL App (3d) 140961, ¶ 28. Without Salley's resistance, Hapanionek would not have had to resort to force and strike Salley to restrain him. See *id.* (Defendant's actions material element and substantial factor in bringing about injury if, absent those actions, injury would not have occurred.). Further, Salley's conduct was the legal cause of Hapanionek's injury because, in pushing Hapanionek and resisting his attempts to deescalate the situation, it was foreseeable that Hapanionek would be required to use force to restrain him. As the correctional officers did not carry weapons, it was foreseeable that Hapanionek would need to use his hands when Salley disobeyed commands and refused to submit when Hapanionek attempted to restrain him. Accordingly, we find the evidence sufficient to prove Salley guilty of resisting or obstructing a correctional employee beyond a reasonable doubt.

¶ 49 Affirmed.