NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 220216-U

NO. 4-22-0216

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 21, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| CECIL BARBARY, | ) | No. 20CF555 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed the trial court's dismissal of count I of the superseding indictment for failure to state an offense where the defendant moved to dismiss the deficient charge after trial commenced and the defendant did not show prejudice.

¶ 2    Pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017), the State appeals the trial court's order dismissing count I of the superseding indictment for failure to state an offense. The State argues that defendant failed to show prejudice resulting from any deficiency in the charge. We reverse and remand with instructions to the trial court to consider the evidence and enter judgment on count I of the superseding indictment, if the court finds the evidence sufficient to convict defendant beyond a reasonable doubt on that count.

¶ 3                                    I. BACKGROUND

¶ 4        On October 27, 2021, defendant was charged in a superseding indictment with the offenses of home invasion (count I) (720 ILCS 5/19-6(a)(2) (West 2020)), criminal trespass to residence (count II) (720 ILCS 5/19-4(a)(2) (West 2020)), criminal damage to property (count III) (720 ILCS 5/21-1(a)(1) (West 2020)), and domestic battery (count IV) (720 ILCS 5/12-3.2(a)(1) (West 2020)). The sufficiency of the charge in count I is at issue in this appeal. Count I charged, in pertinent part, as follows:

"That on or about the 15th day of March, 2020, in the County of Winnebago, State of Illinois, Cecil Barbary committed the offense of Home Invasion, in that the defendant, knowingly entered the dwelling place of another, Mallory Lambert, *** , when the defendant knew or has [*sic*] reason to know that one or more persons were present and intentionally caused injury to Mallory Lambert."

¶ 5        Defendant waived a jury trial. The following evidence was adduced at defendant's bench trial.

¶ 6        Mallory Lambert and defendant began an on-and-off dating relationship in 2013 that lasted into 2019. They had two children together. One of the homes they shared during their relationship was an apartment on Sun Valley Terrace in Rockford. At the time of trial, Lambert still lived there, although, according to Lambert, defendant had moved out in approximately 2017.

¶ 7        Lambert testified that, on March 15, 2020, she and defendant were at Cliffbreakers, a hotel, to have a good time. While there, defendant insisted on a paternity test to prove that two of Lambert's children were his. They argued. Lambert testified that they were in an elevator when defendant "pushed" her in her eye, causing her pain. According to Lambert, she

went home but did not invite defendant to go home with her. She testified that she got home at two or three in the morning, locked the deadbolt on her door, and went to sleep. Lambert testified that she was awakened by multiple telephone messages from defendant, so she fastened the chain on her door in addition to the deadbolt.

¶ 8 Lambert testified that she next awoke to find defendant standing over her bed. She asked defendant how he got into her residence because he did not have a key. Lambert testified that she went into the living room and saw the door "off the hinges" and the doorframe broken. According to Lambert, she tried to get to her phone to call the police, but defendant grabbed her by her neck and squeezed. She testified she had bruises where defendant squeezed her neck. Lambert testified that she was screaming. The next thing she knew, the police were there. On cross-examination, Lambert testified that, until a couple months before trial, her electric bill had still been in defendant's name. On redirect examination, Lambert testified that defendant did not have permission to be in her residence on March 15, 2020.

¶ 9 The evidence showed that the police received two 911 calls from different citizens in the early morning hours of March 15, 2020, regarding an altercation at Lambert's address. At approximately 5:30 that morning, the police were dispatched to Lambert's apartment. Upon arrival, they saw the door to Lambert's apartment broken off its hinges and the doorframe pulled out from the wall. The police observed that Lambert was "hysterical" and that she had an injury to her neck. Defendant accused the officers of violating his rights, and he stated that the door was broken when he arrived at Lambert's apartment. The State presented testimony that defendant gave the sheriff's department an address on "Rose Avenue" when defendant was booked into the county jail following this incident.

¶ 10        After the State rested, defendant did not move for a directed finding but presented a defense. Defendant's first witness was Gilbert McDonald, who testified that he visited defendant at Lambert's Sun Valley Terrace address prior to defendant's arrest in March 2020. On cross-examination, McDonald testified that he did not know how long defendant lived at the Sun Valley Terrace address or when he moved from that address.

¶ 11        Defendant then testified on his own behalf. Defendant testified that he first moved in with Lambert in 2013. They lived together in Belvidere until they moved to Rockford in 2015. According to defendant, Lambert moved by herself with her children to the apartment on Sun Valley Terrace in 2016. Defendant testified that he moved in with Lambert at the Sun Valley Terrace apartment at the end of 2016 or in early 2017. Defendant testified that he moved out of the Sun Valley Terrace apartment in 2018 but moved back in with Lambert in 2019. According to defendant, when he was arrested in March 2020, he still had the electric bill in his name and kept everyday items like a toothbrush and video games at Lambert's apartment. Defendant testified that his daughter from another relationship also stayed at the Sun Valley Terrace address. Defendant testified that he gave the Rose Avenue address to the police when he was booked in March 2020 because he "never really gave out where [defendant] was technically living." According to defendant, Rose Avenue was his mother's address where he received mail.

¶ 12        Defendant testified that he and Lambert argued during the evening of March 14, 2020, while they were at Cliffbreakers. He testified that, after Lambert left, he went to the Sun Valley Terrace apartment building and let himself into the lobby with a key. According to defendant, he knocked on Lambert's door, which "just came open." Defendant testified that he went inside because he "technically just broke the door" and he did not want Lambert to be inside with a broken door. According to defendant, nothing physical occurred between him and

Lambert, and defendant did not try to prevent Lambert from reaching her phone. Defendant testified that Lambert was "kind of scared" because of "how [defendant] got in." Defendant testified that the door was "weak *** so it just came open." Then, according to defendant, the police came in, "very aggressive." According to defendant, he told the police, "I didn't touch [Lambert]." In an examination by the court, defendant testified that he did not have a key to Lambert's apartment and that Lambert had taken his key back from him prior to March 14, 2020. Defendant testified: "[Lambert] didn't want me to come in randomly or anything like that." After defendant's testimony, the defense rested.

¶ 13        In rebuttal, the State presented evidence that, on March 16, 2020, defendant reported his residence as the Rose Avenue address to the county pretrial services officer. According to that officer, defendant stated that he had been living at the Rose Avenue address for eight months and that his previous address was on Sun Valley Terrace. The State then rested, and the court asked if there were "any motions at this time." Defense counsel answered, "No, Judge."

¶ 14        The court stated: "Well, here's a problem." The court pointed out that count I of the superseding indictment lacked two elements of the offense of home invasion, namely, that defendant was not a peace officer acting in the line of duty and that defendant entered Lambert's residence "without authority." For clarity, we set forth the elements of home invasion:

> "A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and *** intentionally causes any injury *** to any person or persons within the dwelling place." 720 ILCS 5/19-6(a)(2) (West 2020).

¶ 15        After the court noted the deficiency in the superseding indictment, defense counsel filed a written motion for a directed finding, arguing that count I of the superseding indictment was fatally defective. In ruling, the court noted the requirement that a charge be brought with sufficient specificity to allow a defendant to prepare a defense and then stated: "[W]here there are two material elements that are not alleged *** I can't find that to be sufficient. *** [T]here will be no judgment of conviction" on count I. The court found defendant guilty on the remaining counts of the superseding indictment. The State filed a timely notice of interlocutory appeal.

¶ 16                        II. ANALYSIS

¶ 17        Rule 604(a)(1) permits the State to appeal orders having the "substantive effect" of dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-1 (West 2020)). Section 114-1(a)(8) of the Code (725 ILCS 5/114-1(a)(8) (West 2020)) allows dismissal of an indictment where the charge does not state an offense. Where the nature and elements of the offense intended to be charged are not set forth in the complaint, it fails to state an offense and is subject to dismissal under section 114-1(a)(8) of the Code. *People v. Abrams*, 48 Ill. 2d 446, 459 (1971). Neither the trial court nor the appellate court can evaluate the evidence when determining whether dismissal pursuant to section 114-1(a)(8) is warranted. *People v. Soliday*, 313 Ill. App. 3d 338, 343 (2000). An appeal from a dismissal for failure to state an offense requires the reviewing court to determine whether the indictment complies with the statutory requirements that a charge be in writing, set forth the nature and elements of the offense, and allege the provision violated, the name of the accused, and the date and county of the crime's commission. *Soliday*, 313 Ill. App. 3d at 342.

¶ 18　　　　Initially, we resolve the parties' dispute over the correct standard of review. The State contends that because the sufficiency of the superseding indictment was challenged "posttrial," the prejudice standard articulated by our supreme court in *People v. Cuadrado*, 214 Ill. 2d 79, 86-87 (2005), is the standard of review. In *Cuadrado*, the court held that there is a general requirement of prejudice when the sufficiency of the indictment is challenged after the trial commences. *Cuadrado*, 214 Ill. 2d at 87. However, the prejudice standard is an evidentiary standard rather than a standard of review.

¶ 19　　　　Defendant argues that the sufficiency of an indictment is a question of law subject to the *de novo* standard of review, citing *People v. Espinoza*, 2015 IL 118218, ¶ 15 (stating that the sufficiency of a charging instrument presents a question of law, which is reviewed *de novo*). Defendant further contends that after a court determines that a defendant suffered a prejudicial violation of due process resulting in dismissal of the indictment, the standard of review is abuse of discretion, citing *People v. Stapinski*, 2015 IL 118278, ¶ 35. Defendant maintains that the State's failure to charge an offense violates a defendant's fundamental right to be informed of the nature and cause of the criminal accusations made against him or her, citing *Espinoza*, 2015 IL 118218, ¶ 15. Thus, defendant maintains that the failure to charge an offense is a due process violation.

¶ 20　　　　*Stapinski* did not involve dismissal of an indictment for failure to state an offense but rather a dismissal due to the State's violation of the defendant's substantive due process rights. *Stapinski*, 2015 IL 118278, ¶ 52. The court in *Stapinski* held that the trial court's decision on the appropriate remedy for a prejudicial violation of due process—whether dismissal of the charges or another remedy—is reviewed for abuse of discretion. *Stapinski*, 2015 IL 118278, ¶ 35. Here, after the court considered the requirement that the superseding indictment be specific

enough to allow defendant to prepare a defense, the court found that the omission of two fundamental elements in the superseding indictment required dismissal. Accordingly, we hold that the appropriate standard of review is abuse of discretion.

¶ 21    The State intended to charge defendant in count I of the superseding indictment with the offense of home invasion pursuant to section 19-6(a)(2) of the Criminal Code of 2012 (720 ILCS 5/19-6(a)(2) (West 2020)). Section 19-6(a)(2) provides:

> "A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and *** intentionally causes any injury *** to any person or persons within the dwelling place." 720 ILCS 5/19-6(a)(2) (West 2020).

The trial court ruled that count I of the State's superseding indictment failed to allege that defendant was not a peace officer acting in the line of duty and it also failed to allege that defendant entered Lambert's dwelling without authority. On appeal, the State argues that (1) defendant was not prejudiced by the omissions in the superseding indictment, (2) defendant affirmatively acquiesced in the error when his counsel admitted knowing about the deficiencies in the superseding indictment but waited until after all the evidence had been presented to argue the issue, and (3) the court should have analyzed the superseding indictment as a whole. Defendant maintains that the court applied the correct legal standard in its analysis and that defendant suffered prejudice.

¶ 22    In arguing for reversal, the State relies on *Cuadrado*. In *Cuadrado*, the defendant was convicted of solicitation of murder for hire. *Cuadrado*, 214 Ill. 2d at 81. In the indictment, the State substituted the word "procured" for the statutory word "solicited," and the defendant

argued that the indictment should have been dismissed. *Cuadrado*, 214 Ill. 2d at 84. Our supreme court held that posttrial motions challenging the sufficiency of an indictment are subject to a prejudice standard. *Cuadrado*, 214 Ill. 2d at 86. In *Cuadrado*, the court applied the prejudice standard where the defendant had "ample opportunity before trial" to object to the indictment. *Cuadrado*, 214 Ill. 2d at 88. The court noted that, under the prejudice standard, an indictment is sufficient if it "apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecutions arising out of the same conduct." (Internal quotations omitted.) *Cuadrado*, 214 Ill. 2d at 86-87.

¶ 23    Here, the State argues that because the trial court did not mention prejudice in its analysis, we should reverse without further inquiry. Alternatively, the State argues that defendant was not prejudiced by the missing allegations in the superseding indictment. Regarding the missing language "without authority," the State argues that defendant's defense was that he lived at the Sun Valley Terrace address with Lambert and therefore was there on March 15, 2020, with authority. Consequently, the State asserts, defendant knew of that element. Regarding the missing language pertaining to not being a peace officer acting in the line of duty, the State argues that a defense claiming that defendant was a peace officer acting in the line of duty would have been "absurd," given the evidence.

¶ 24    Defendant agrees that the prejudice standard applies here. We also agree. Although the issue was not raised posttrial, it was raised after all of the testimony was concluded and both sides rested. In *Cuadrado*, the court applied the prejudice standard when an indictment was challenged "after the commencement of trial." *Cuadrado*, 214 Ill. 2d at 87. Further, defense counsel here admitted that he knew about the defective charge but deliberately waited until all

the evidence had been heard before addressing the issue. Thus, as in *Cuadrado*, defendant had ample opportunity before trial to object to the superseding indictment.

¶ 25    Defendant argues that he was prejudiced because the superseding indictment did not apprise him of the elements of the offense with sufficient specificity to allow him to prepare a defense. Defendant also contends that the trial court applied the prejudice standard in dismissing count I of the superseding indictment. Defendant asserts that, even though the court did not verbally discuss prejudice in its ruling, the court was aware of that standard through the State's argument and case law. Further, defendant argues that the court in a bench trial is presumed to know the law.

¶ 26    The court relied on our decision in *People v. Pettus*, 84 Ill. App. 3d 390 (1980), in finding that the missing elements were not merely formal defects. In *Pettus*, the defendant was convicted, *inter alia*, of home invasion. *Pettus*, 84 Ill. App. 3d at 391. The information failed to allege the element "without authority," and the defendant moved, both at the close of the State's evidence and in a posttrial motion, to dismiss the home invasion charge as fatally defective. *Pettus*, 84 Ill. App. 3d at 391-92. The trial court denied the defendant's motions. *Pettus*, 84 Ill. App. 3d at 392. On appeal, the defendant contended that the omission in the information required dismissal. *Pettus*, 84 Ill. App. 3d at 391-92. We agreed, holding that the element of "without authority" is "fundamental to the offense," because "[w]ithout it, one is left only to speculate as to the status of the defendant, whether he be an invitee, or has entered the premises by error, or in some legal capacity." *Pettus*, 84 Ill. App. 3d at 393. We also noted that the element excluding peace officers in the line of duty is one of "status," and the failure to allege such status in the charging instrument is a fatal defect. *Pettus*, 84 Ill. App. 3d at 393.

¶ 27　　　　The record shows that the court considered *Pettus* in conjunction with the requirement that a charge be sufficiently specific to allow the defendant to prepare a defense. Thus, we agree with defendant that, although the court did not engage in a comprehensive prejudice analysis, it factored prejudice into its decision to dismiss count I of the superseding indictment.

¶ 28　　　　The State questions whether *Pettus* is good law after *Cuadrado*. In *Pettus*, the State maintained that (1) the element of "without authority" could be implied and (2) the defendant was not prejudiced because he was sufficiently apprised of the charge through discovery. *Pettus*, 84 Ill. App. 3d at 393-94. We rejected both contentions, stating the element of "without authority" was left to speculation and that there was no authority for the proposition that discovery could cure a defect in the charging instrument. *Pettus*, 84 Ill. App. 3d at 393-94. Here, as discussed below, the element of "without authority" was the linchpin of the defense, and both sides introduced extensive evidence bearing on that element. Also as discussed below, the evidence proved that defendant was not a peace officer acting in the line of duty. Under our fact scenario, there is no tension between *Pettus* and *Cuadrado*.

¶ 29　　　　As noted, the State argues that defendant's defense centered around whether he entered Lambert's apartment without authority. Defendant disputes this. Defendant maintains that his defense was directed to whether Lambert's apartment was the "dwelling place of another." Defendant argues that the State "conflates" these distinct elements. Defendant argues that, had he known about the "without authority" element, he could have tried to raise a reasonable doubt about whether he had consent to enter Lambert's apartment.

¶ 30　　　　Defendant ignores that "without authority" was addressed both in the State's case and defendant's testimony. Lambert testified on redirect examination that defendant entered her

apartment without her permission. In addition, defendant testified that he gave his key to the apartment back to Lambert before this incident because Lambert did not want him coming in "randomly or anything like that." So, contrary to defendant's assertion, the evidence directly addressed whether (1) defendant was given permission to enter the apartment, (2) permission was ever revoked, and (3) defendant reasonably thought he would be allowed to enter Lambert's apartment.

¶ 31    Furthermore, the evidence bearing on the issue of "dwelling place of another" circumstantially proved defendant's lack of authority to enter Lambert's apartment. Defendant argues that "dwelling place of another" implicates a tenancy interest in the property, whereas "without authority" implicates lack of consent. However, defendant never attempted to prove that he had a tenancy interest in Lambert's property. He attempted to prove only that he was living there and had permission to enter. Defendant did not testify that he signed the lease on Lambert's apartment, much less produce a lease bearing his signature. He testified that he kept a toothbrush and video games in the apartment and that the electric service was in his name. Defendant's closing argument centered on his authority to be in Lambert's apartment. Defense counsel argued:

>    "Sun Valley Terrace was the only place [defendant] had to go. That shows he was living there. That shows that any entry, however it was made, was with authority. *** Keep in mind, [the State has] to show that it's a—that [defendant] has to know that he did not have authority."

¶ 32    Regarding the element excluding defendant's status as a peace officer acting in the line of duty, defendant argues that, if the superseding indictment had contained that allegation, he could have moved for a directed finding on the ground that the State adduced no

proof of that element. Even though the "peace officer" language in the statute is a material element, it can be proved by circumstantial evidence. *People v. Davis*, 106 Ill. App. 3d 260, 266 (1982). Here, the State proved that defendant entered Lambert's apartment because of his and Lambert's argument at Cliffbreakers, which defendant's testimony corroborated. The State also proved that Lambert was in bed sleeping when defendant entered, which defendant's testimony corroborated. Defendant testified that he entered the apartment because he did not want Lambert staying in a place with a broken door. Therefore, even if defendant were a peace officer, the evidence proved that he was not acting in the line of duty but for personal reasons. Proof that the defendant's acts lie clearly outside the line of duty of a peace officer, without proof that the defendant was not a peace officer, is sufficient because this element must often be proved circumstantially and indirectly due to the State's inability to call the defendant to testify. *People v. Jones*, 157 Ill. App. 3d 106, 111 (1987). Accordingly, we hold that defendant did not meet the prejudice standard and the court abused its discretion in dismissing count I of the superseding indictment. Because we determine that defendant cannot demonstrate prejudice, we do not reach the State's other arguments for reversal.

¶ 33       The State requests that on remand we instruct the trial court to enter judgment on count I of the superseding indictment. However, in dismissing count I, the court did not weigh the evidence with respect to home invasion or find defendant guilty of that charge. See *Soliday*, 313 Ill. App. 3d at 342 (stating that when addressing a defendant's motion to dismiss a charge under section 114-1(a)(8), the court is strictly limited to assessing the legal sufficiency of the charging instrument and may not evaluate the evidence). Accordingly, we reverse and remand with instructions that the court consider the evidence regarding count I of the superseding

indictment, and, if it finds the evidence sufficient beyond a reasonable doubt to prove the charge of home invasion, enter judgment on count I.

¶ 34                                III. CONCLUSION

¶ 35         For the reasons stated, we reverse and remand the trial court's judgment with instructions as indicated.

¶ 36         Reversed and remanded.